UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | No. 3:19-cr-00064-VLB |
| | : | |
| **ROYSHAWN ALLGOOD** | : | |
| | : | December 9, 2021 |
| | : | |

**MEMORANDUM OF DECISION DENYING**
**DEFENDANT'S MOTIONS TO REDUCE SENTENCE [DKTS. 1633 & 1718]**

**Before the Court is Defendant, Royshawn Allgood's, Motions for Reduction of Sentence, in which Mr. Allgood moves for the Court to "reduce his sentence by an amount of time that the Court deems appropriate." [Pro Se Mot., Dkt. 1633; Mot., Dkt. 1718; Mem. of Law, Dkt. 1719 at 1]. Mr. Allgood argues an entitlement to a sentence reduction because his medical condition has made incarceration during the COVID-19 pandemic unusually severe. [Mem. of Law at 1]. The Government objects, arguing that Mr. Allgood has not identified extraordinary and compelling reasons for a sentence reduction, he still poses a significant danger to the safety of the community, and the § 3553(a) factors strongly weigh against his release. [Opp., Dkt. 1748]. Mr. Allgood filed a reply. [Reply, Dkt. 1755].**

**For the following reasons, the Court DENIES Mr. Allgood's motion for reduction of sentence.**

I.   **BACKGROUND**

A. **Case Background**

On June 4, 2019, Mr. Allgood pled guilty to conspiracy to distribute and to possess with intent to distribute cocaine in violation of §§ 846, 841(a)(1),

1

841(b)(1)(B), and 841(b)(1)(C). [Plea Agreement, Dkt. 321]. In the plea agreement, Mr. Allgood agreed and acknowledged that the quantity of heroin, cocaine, and cocaine base, which was part of his relevant and readily foreseeable conduct, was at least 100 kilograms but less than 400 kilograms in converted drug weight. [*Id.*]

On January 3, 2020, Mr. Allgood appeared before the Court for sentencing, where the Court adopted the facts provided in the presentence report ("PSR") as its findings of fact. [Sentencing Tr., Dkt. 900]. The PSR provides that Mr. Allgood has several prior adult convictions for: (1) breach of peace in the second degree and interfering/resisting an arrest, (2) possession of controlled substance of less than 4 ounces of marijuana, and (3) breach of peace in the second degree. [PSR, Dkt. 907 at pp. 13–16].

For the underlying conviction, the Court sentenced Mr. Allgood to 71 months of imprisonment to be followed by five years of supervised release. [Judgment, Dkt. 908]. Mr. Allgood served the first two months of his incarceration (from January to March 2020) at Donald W. Wyatt Detention Center in Central Falls, Rhode Island. [Mem. of Law at 4]. Mr. Allgood was transferred to Metropolitan Detention Center in Brooklyn, New York, in March 2020 and then to Fort Dix Federal Correctional Institution ("FCI") in New Hanover Township, New Jersey, in March 2021. [*Id.*]. Most recently in August 2021, Mr. Allgood was transferred to FCI Fairton in Fairfield Township, New Jersey, where he is currently serving this sentence. [*Id.*]. He has served approximately 21 months of his 71-month sentence.

B. **Allgood's Health**

Mr. Allgood seeks a sentence reduction arguing that his underlying health conditions put him at an increased risk of severe illness or death if he contracts COVID-19, which caused stress and worry. [Mem. of Law at 10–12]. Mr. Allgood claims that he suffers from respiratory issues including asthma, citing to his medical records that show he has a "history of bronchial asthma since childhood," which was once classified as "intermittent asthma" for which he has been prescribed an Albuterol inhaler. [*Id.* at 10–11]. The medical records reference to Mr. Allgood's asthma states in full:

> IM gives history of BRONCHIAL ASTHMA SINCE childhood. He has been classified as intermittent asthma and uses albuterol on a prn[1] basis. He denies any nighttime awakenings, audible wheezing, and excessive sputum production. He has no problems when exercising. He has never been intubated not any recent er visits or hospitalizations for asthma exacerbations. He denied ever being on oral steroids or using a nebulizer machine. His Pulse Ox today is 98% and PFT are as follows 650/600//.

[Med. Records, Dkt. 1721 at 1]. Mr. Allgood has been prescribed an albuteral inhaler with instructions to not use it daily and only as needed. [*Id.* at 10].

Mr. Allgood also reports that he suffers from high blood pressure. [Mem. of Law at 11–12]. The medical records show that between March and May 2020, Mr. Allgood had elevated blood pressure readings, which have been leveling out with his most recent readings showing he is within the normal range. [*Id.*]. Nothing in

---

[1] PRN stands for 'pro re nata,' which generally means taken as needed. *See Pro Re Nata Prescription and Perception Difference between Doctors and Nurses*, Korean J. Fam. Med., (Jul. 2014), available at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4129247/.

the medical records show he was ever diagnosed with hypertension or was prescribed medication to treat hypertension.

In February 2021, Mr. Allgood tested positive for COVID-19. [*Id.* at 38]. Mr. Allgood's medical records report that he was asymptomatic and that his case was resolved on February 18, 2021. [*Id.* at 39, 47]. Following his COVID-19 diagnosis, Mr. Allgood received an x-ray of his chest, confirming that his lungs remained in good health. [*Id.* at 75]. On March 24, 2021, Mr. Allgood was offered and initially refused to receive a COVID-19 vaccination. [*Id.* at 77]. Mr. Allgood ultimately received his first dose of the Pfizer vaccine on August 19, 2021. [Supp. Med. Records, Dkt. 1757].

### C. Conditions of Confinement

Mr. Allgood further argues that the conditions of his confinement "have been extraordinarily harsh, and far exceed what this Court anticipated at the time of sentencing." [Mem. of Law at 6]. Specifically, Mr. Allgood claims that he: (1) has been subjected to frequent lockdowns and when the facility was not on lockdown, he was "only allowed out of his cell for 30 minutes three times per week"; (2) "was let out of his cell for just five minutes every 3-4 days to take a shower"; (3) "had no opportunity to participate in programming, classes, or recreation, nor could he access supplies from the commissary"; (4) "could not keep in regular communication with his family because he did not have access to the phones and computers and social visits were eliminated"; and (5) "had limited access to cleaning supplies and only received one mask every three months." [*Id.* at 7–8].

## II. LEGAL STANDARD

As a rule of finality, courts generally should not modify sentences once imposed. The court may not modify a term of imprisonment once imposed except as prescribed by law. 18 U.S.C. 3582(c). Under the First Step Act of 2018, federal courts are now authorized to modify a term of imprisonment:

> [U]pon a motion of the Director of the Bureau of Prisons, or upon motion of the defendant after defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.

18 U.S.C. § 3582(c)(1)(A).

Where this exhaustion requirement is met, a court may reduce the defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* The Court must also consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." 18 U.S.C. § 3583(c)(1)(A). "The defendant bears the burden of showing that [he] is entitled to a sentence reduction." *United States v. Gagne*, 451 F. Supp. 3d 230, 234 (D. Conn. 2020) (citing to *United States v. Ebbers*, 432 F. Supp. 3d 421, 426–27 (S.D.N.Y. 2020)).

## III. ANALYSIS

### A. Exhaustion Requirement

Section 3582 authorizes a court to reduce a term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the

defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ."  Meaning, the defendant should exhaust administrative rights *before* bringing a motion before the court.  "Section 3582(c)(1)(A) imposes a statutory exhaustion requirement that must be strictly enforced."  *United States v. McCarthy*, 453 F. Supp. 3d 520, 524 (D. Conn. 2020) (internal citation marks omitted).

Mr. Allgood argues that he filed his *pro se* motion to the warden of FCI Fort Dix on June 15, 2021.  [Mot., Dkt. 1721].  The BOP did not timely act, prompting Mr. Allgood to file the instant Motion.  The Government concedes this point and the Court finds that Mr. Allgood has exhausted all his administrative remedies.

### B. "Extraordinary and Compelling Reason"

At Congress's direction, the Untitled States Sentencing Commission promulgated guidance on circumstances constituting "extraordinary and compelling reasons."  *See* U.S.S.G. 1B1.1 (November 1, 2018).  The Application Notes to U.S.S.G. § 1B1.13 provides that the defendant meets the requirements of "extraordinary and compelling reasons" when:

(A) **Medical Condition of the Defendant**. –
  (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory).  A Specific prognosis of life expectancy (i.e., probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (A.L.S.), end-stage organ disease, and advanced dementia.
  (ii) The defendant is—
    (I)    Suffering from a serious physical or medical condition,
    (II)   Suffering from a serious functional or cognitive impairment, or
    (III)  Experiencing deteriorating physical or mental health because of the aging process,

>     that substantially diminishes the ability of the defendant to provide self-care within the environment of the correctional facility and from which he or she is not expected to recover. . . .
> 
> **(D)** <u>Other Reasons</u>. —As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, Commentary Application Note 1(A). Before the transformative amendment to the First Step Act, power was vested *solely* in the BOP to determine what "other reasons" qualify as "extraordinary and compelling" to warrant the grant of compassionate release. *United States v. Haynes*, 456 F. Supp. 3d 496 (E.D.N.Y. 2020). "[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). "[A] district court's discretion in this area—as in all sentencing matters—is broad." *Id*.

The Second Circuit in *Brooker,* 976 F.3d 230 provided guidance on how to interpret § 3583(c)(1)(A). The court provided that § 3582(c)(1)(A) speaks to sentence reductions, not just immediate release. *Brooker,* 976F.3d at 237. ("A district court could, for instance, reduce but not eliminate a defendant's prison sentence, or end the term of imprisonment but impose a significant term of probation or supervised release in its place."). The only statutory limit on a court's discretion is that "[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reasons." *Id*. at 238 (citing to 18 U.S.C. § 994(t)) (emphasis in original). The Second Circuit did not consider the defendant's motion under §

3582(c)(1)(A), instead remanding it to the district court with the instruction to "exercise the discretion that the First Step Act gives it." *Id*. at 238.

Mr. Allgood's motion, he relies heavily on *United States v. Rodriguez*, 492 F. Supp. 3d 306 (S.D.N.Y. 2020). In *Rodriguez*, the district court reduced a defendant's life sentence to a 30-year sentence applying § 3582 and the precedent established by *Brooker*. *Id.* There, the defendant only served 20 years of his life sentence, leaving ten years left on his sentence following the sentence reduction. *Id*. at 308. The court in *Rodriguez* focused on three reasons for finding extraordinary and compelling reasons warranting a sentence reduction. *Id*. at 310–12. The first reason was the defendant's heightened risk during the COVID-19 pandemic because of his underlying health conditions, including clinical obesity and Type II diabetes. *Id*. at 310–11. The second reason was the more punitive than intended sentence the defendant endured during the pandemic. *Id*. at 311. The third reason was his "remarkable" rehabilitation documented by letters from fellow inmates, family, friends, and 27 prison staff members. *Id*. These letters outlined with specificity the kind of man the defendant transformed into while serving his sentence. *Id.* at 311–12. The letters showed the defendant had tremendous respect for staff and inmates. *Id*. He was assigned work assignments reserved for the most responsible and trustworthy inmates. *Id*. He helped other inmates rehabilitate, including teaching at least one inmate how to read. *Id*. There, the court found the "overwhelming evidence of, not just rehabilitation, but transformation, weigh[ed] in favor of finding extraordinary and compelling reasons" to modify the defendant's sentence. *Id*. at 313.

Similarly, in *United States v. Quinones*, No. 00-cr-761-1, 2021 WL 797835 (S.D.N.Y. Feb. 27, 2021), the defendant, a co-defendant in *Rodriguez*, also sought compassionate release or a sentence reduction. The court granted the motion, reducing the defendant's sentence from life imprisonment to thirty-five years. *Id*. at *1. Like *Rodriguez*, the district court found extraordinary and compelling reasons supporting a sentence reduction. The court considered: the defendant's underlying health conditions, including Type 2 diabetes mellitus and obesity, which put him at a high risk of severe illness from COVID-19; that the pandemic made the defendant's incarceration harsher and more punitive than intended at the time of sentencing; and the overwhelming evidence of total rehabilitation. *Id*. at *2. The defendant evidenced his rehabilitation by submitting letters from family, friends, fellow inmates, and prison officials. *Id*. at *3. The district court received a compelling letter from the retired warden of the facility where the defendant was incarcerated, who had never written a letter on behalf of an inmate. *Id*.

Mr. Allgood's reliance on *Rodriguez* is misplaced. Even if *Rodriguez* was persuasive precedent, the circumstances of the instant matter are vastly different. In *Rodriguez*, the defendant had well established medical conditions that placed him at a risk of severe illness. Here, Mr. Allgood has exhibited normal respiratory function and not exhibited any asthma symptoms while in custody. He was given an albuterol inhaler, to use as needed, based on his self-report that he has asthma. There is no objective evidence that he has asthma, or if he does, the extent of his asthma and, more importantly, how that impacts his risk of severe COVID infection.

Mr. Allgood received regular medical check-ups, including a chest x-rays showing no signs of illness, and preventive medication.  In addition, his medical records show that he did have COVID, which was very mild and well-treated considering he only had reported symptoms for a day.  Thus, Mr. Allgood's medical conditions are unlike the conditions in *Rodriguez*.   There is no evidence he is at risk of suffering a sever case of COVID-19.  The evidence is to the contrary.

Further, Mr. Allgood's reliance on *Rodriguez* is misplaced because in *Rodriguez* the defendant exhibited clear signs of significant rehabilitation, which is not at all present here.  While the Court agrees with Mr. Allgood that his opportunities at showing rehabilitation has been limited due to the decreased programming, Mr. Allgood's has been given at least one opportunity, which he squandered. Mr. Allgood briefly participated in a work assignment, performing "East Yard detail," at FCI Fort Dix.  [Mem. of Law at Ex. C].  Mr. Allgood was unassigned after being "sanctioned on two separate incident reports, both of the greatest severity.  He received a moderate level incident report prior to his arrival at FCI Fort Dix."  [*Id.*].  Mr. Allgood was sanctioned for "disciplinary reasons," including possessing a hazardous tool, refusing to obey an order, and "being in an unauthorized area." [*Id.*].  Thus, rather than showing extraordinary rehabilitation, Mr. Allgood has shown continued disrespect for the rule of law and a continued need for deterrence.

Mr. Allgood's argument that the conditions of confinement constitute extraordinary and compelling reasons warranting a sentence reduction fails for several reasons.  First, his general claims about the conditions of confinement are

unsupported by evidence aside from what his lawyer reports in the memorandum of law.  There is no affidavit or other evidence to support many of his claims. However, even if the Court was to accept his statements are true, his argument overlooks a clear flaw in its reasoning, which is what did the Court intend when it sentenced him.  While the Court may not of exactly predicted the COVID-19 pandemic, it was aware that communal diseases spread more rapidly in prisons than it does in the general public.

The Court was also aware that Mr. Allgood could be subject to lockdowns, less than desirable access to showers, and limited access to the non-incarcerated world.  The BOP is responsible for a defendant's custody with almost no oversight from the courts aside from constitutional violations.  Though the conditions Mr. Allgood was subject to may have been abnormal when compared to the conditions immediately preceding the pandemic, there is nothing to suggest they rise to constitutional violations.  This does not establish his conditions were harsher than intended.

Mr. Allgood's claimed increased fear during the COVID-19 pandemic is not "extraordinary." Everyone experienced the fear Mr. Allgood faced during the COVID-19 pandemic.  Unlike Mr. Allgood, most were isolated in their homes, without access to around the clock medical attention.  To some extent, most were forced to expose themselves to infection to meet their basic human needs.  While it is probable that Mr. Allgood was more afraid of becoming ill during the COVID-19 pandemic, mainly because he was in a prison facility with many infections, that fear would logically be balanced by evidence of his access to expert medical care.

Because he was incarcerated, he had access to potentially life-saving vaccines earlier than he would have had he been at liberty. Thus, he was able to alleviate his fear sooner than he would have if he was not in custody.

His claim of extreme isolation is also unpersuasive.  Extreme isolation was an ubiquitous feature of the pandemic.  It was experienced by those at liberty and those incarcerated.  Many of those not incarcerated were isolated in their homes alone for months on end. Mr. Allgood would have been isolated had he not been incarcerated. To the extent Mr. Allgood's isolation was greater than many, it was commensurate with the deprivation of liberty experienced by incarcerated individuals and was not proven to be any greater than necessary to best assure the safety of all. The pandemic was and continues to be a difficult situation for everyone. Therefore, the Court finds that Mr. Allgood failed to establish extraordinary and compelling reasons that would warrant a sentence reduction.

C. <u>Section 3553(a) Factors</u>

Though the Court finds no extraordinary and compelling reasons to warrant sentence reduction, the Court would have also denied this request according to the sentencing factors of § 3553(a), which weigh against sentence reduction.

Section 3553(a) requires the court in imposing a sentence that is sufficient, but not greater than necessary, to consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and

>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for--
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
>>
>>> (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>>>
>>> (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or . . .
>
> (5) any pertinent policy statement--
>
>> (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>>
>> (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

Although a court considering a motion by a defendant is no longer required to consider whether a defendant would pose a "danger to the community" as described by § 1B1.13, it is still required by § 3553(a) to "consider . . . the need to protect the public from further crimes of the defendant." *United States v. Vargas*, 502 F. Supp. 3d 820, 823 (S.D.N.Y. 2020). Accordingly, a court must weigh both a defendant's "recidivism risk and potential threat to the community at large." *Id*.

Here, the section 3553(a) factors do not warrant a sentence reduction. Of note is the seriousness of the offense conduct. Mr. Allgood conspired to distribute

significant quantities of heroin, cocaine base, and cocaine. He engaged in conduct that prayed on addicts for his own financial gain. His greed contributed to the deterioration of the lives of his customers, their families, and the community. The impact of his illegal conduct was well known to Mr. Allgood, who reported being the child of an addict and the impact the addiction had on him and his family. Mr. Allgood's decision to engage in the conduct that could cause another child to lose its parental unit and his family is insensate.

The only change in the 3553(a) factors between when he was sentenced and now is the COVID-19 pandemic and Mr. Allgood's prison conduct. As discussed above, the Court does not find that the COVID-19 pandemic and its impact on Mr. Allgood's sentence warrants a reduction in his sentence. In addition, as described above, Mr. Allgood has not established he has been rehabilitated in the 22 months he has served so far. The evidence supports a contrary conclusion based on his serious disciplinary conduct while incarcerated. While the Court does not think Mr. Allgood is beyond rehabilitation, he is simply not there yet.

As such, the sentencing factors outlined in § 3553(a) weigh against Mr. Allgood's request for a sentence reduction.

IV. **CONCLUSION**

For the above reasons, the Court denies Mr. Allgood's motion for a sentence reduction under the First Step Act.

IT IS SO ORDERED.

Vanessa Bryant
*Digitally signed by Vanessa Bryant
Date: 2021.12.09 15:37:10 -05'00'*

**Hon. Vanessa L. Bryant**
**United States District Judge**

**Dated this day in Hartford, Connecticut: December 9, 2021**